**THOMPSON COBURN LLP**
**JOHN L. VIOLA, CSB 131407**
jviola@thompsoncoburn.com
**CARA A. STRIKE, CSB 344467**
cstrike@thompsoncoburn.com
**10100 Santa Monica Blvd., Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

**THOMPSON COBURN LLP**
**CHARLES M. POPLSTEIN (*pro hac vice*)**
cpoplstein@thompsoncoburn.com
**One US Bank Plaza**
**St. Louis, Missouri 63101**
**Tel: 314.552.6095 / Fax: 314.552.7095**

Attorneys for Defendant
STILA STYLES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MEDINA, an individual, | CASE NO. 2:24-cv-06340-FLA-RAO |
| Plaintiff, | **MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT** |
| v. | |
| STILA STYLES, LLC, a Delaware limited liability company; MARIANO TESTA, an individual; and Does 1-25, inclusive, | Date:    September 19, 2025<br>Time:    1:30 p.m.<br>Place:    Courtroom 9B |
| Defendants. | |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8232056

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES................................................ 1

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................ 3

    A.      Background Regarding Stila. ............................................................. 3

    B.      Plaintiff Begins Working with Stila. .................................................. 3

        1.      Plaintiff Agrees That He Will Report Sexual Harassment and Attends Sexual Harassment Awareness Training. ................. 3

        2.      Plaintiff's Job Duties as an SAE. ........................................... 4

    C.      Plaintiff Attends the 2022 Ulta Event and Does Not Report Any Alleged Harassment. ........................................................... 5

    D.      Plaintiff Attends the 2023 Ulta Event in Vegas, Repeatedly Calls Testa "Daddy," and Makes Inappropriate Comments About Testa. ................................................................................ 6

    E.      Plaintiff Contacts Tuey Regarding a New California Law on July 18, 2023. ................................................................................... 7

    F.      Plaintiff is Not at the Burbank Ulta Store When He Reported He Would Be There. ....................................................................... 7

    G.      On September 29, 2023, Plaintiff is Not at the Sherman Oaks Ulta Store as Scheduled. ................................................................. 8

    H.      October 24, 2023, Plaintiff is Placed on a Performance Improvement Plan. ......................................................................... 8

    I.      November 18, 2023, Plaintiff Submits Inconsistent Sales Numbers and Is Not at the Cerritos Store Event. .............................. 9

    J.      On November 25, 2023, Plaintiff is Not at the Seal Beach Store Event. ............................................................................................... 9

    K.      Plaintiff is Dismissed. ..................................................................... 10

    L.      Plaintiff Contacts Tuey on December 4, 2023 Regarding Backpay for 2022. .......................................................................... 10

    M.      Since His Dismissal, Plaintiff Has Not Sought Mental Health Treatment and Earns More Money in a New Position. ..................... 11

III.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT ........ 11

IV.     ARGUMENT .................................................................................................. 12

i

A.     Plaintiff's Harassment Claims Fail. ...................................... 12

1.     Plaintiff Fails to Prove that Testa Engaged in Any Severe or Pervasive Conduct Altering the Conditions of His Employment. ......................................................... 13

B.     Plaintiff Cannot Establish a Case of Sex/Gender Discrimination under FEHA. ...................................... 14

1.     Stila Dismissed Plaintiff for Legitimate, Non-Discriminatory Reasons. ............................ 15

2.     There is No Evidence of a Discriminatory Motive. ................... 16

3.     Plaintiff Cannot Present Substantial Evidence of Pretext. ......... 17

C.     Plaintiff's Labor Code 1102.5 Whistleblower Retaliation Claim Fails. ........................................... 18

1.     Plaintiff Fails to Identify Any Nexus Between His November Dismissal and His July Discussion with Tuey Regarding the New California Law. .............................. 19

D.     Plaintiff's Failure to Prevent Harassment and Discrimination Claim Fails Because the Underlying Claims Fail. ................................ 20

E.     Plaintiff's Claim for Wrongful Termination in Violation of Public Policy Fails. .......................... 21

F.     Plaintiff's Claim for Intentional Infliction of Emotional Distress ("IIED") Fails. .................................... 21

1.     Plaintiff Fails to Show that Stila Engaged in Extreme or Outrageous Conduct. ...................... 22

V.     CONCLUSION ......................................................... 23

LOCAL RULE 7-3 CERTIFICATE OF COMPLIANCE ........................................ 24

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ................................... 25

8232056

ii

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achal v. Gate Gourmet, Inc.*,
 114 F. Supp. 3d 781 (N.D. Cal. 2015) ................................................. 20

*Aguilar v. Avis Rent-A-Car Sys., Inc.*,
 21 Cal. 4th 121 (1999) ............................................................... 12, 13

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................. 11, 13

*Arteaga v. Brinks, Inc.*,
 163 Cal. App. 4th 327 (2008) ....................................................... 17, 19

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ..................................................................... 11

*Clausen v. M/V NEW CARISSA*,
 339 F.3d 1049 (9th Cir. 2003) ......................................................... 11

*Cole v. Fair Oaks Fire Protection Dist.*,
 43 Cal. 3d 148 (1987) .................................................................. 22

*Edgerly v. City of Oakland*,
 211 Cal. App. 4th 1191 (2012) ........................................................ 18

*Feldman v. Allstate Ins. Co.*,
 322 F.3d 660 (9th Cir. 2003) .......................................................... 11

*Guz v. Bechtel Nat'l, Inc.*,
 24 Cal. 4th 317 (2000) ................................................................. 15

*Hersant v. Department of Social Services*,
 57 Cal. App. 4th 997 (1997) ....................................................... 14, 16

*Hicks v. KNT Television, Inc.*,
 160 Cal. App. 4th 994 (2008) .......................................................... 15

*Horn v. Cushman & Wakefield Western, Inc.*,
 72 Cal.App.4th 798 (1999) ....................................................... 15, 16, 18

8232056

iii

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

*Hughes v. Pair*,
   46 Cal. 4th 1035 (2009) ........................................................................ 12, 21

*Janken v. GM Hughes Elecs.*,
   46 Cal. App. 4th 55 (1996) ............................................................................ 22

*Joaquin v. City of Los Angeles*,
   202 Cal. App. 4th 1207 (2012) ...................................................................... 17

*Lawson v. PPG Architectural Finishes. Inc.*,
   12 Cal. 5th 703 (2022) .................................................................................. 18

*Lyle v. Warner Brothers Television Productions*,
   38 Cal. 4th 264 (2006) .................................................................................. 12

*Martin v. Lockheed Missiles & Space Company, Inc.*,
   29 Cal. App. 4th 1718 (1994) .................................................................. 15, 18

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ...................................................................................... 14

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) .................................................................................... 21

*Sangster v. Paetkau*,
   68 Cal. App. 4th 151 (1998) .......................................................................... 17

*Scaf v. D.B. Log Homes, Inc.*,
   128 Cal. App. 4th 510 (2005) ........................................................................ 16

*Scotch v. Art Institute of California*,
   173 Cal. App. 4th 986 (2009) ........................................................................ 18

*Sequoia Insurance v. Superior Court*,
   13 Cal. App. 4th 1472 (1993) ........................................................................ 21

*Trujillo v. North County Transit District*,
   63 Cal. App. 4th 280 (Cal. Ct. App. 1998) .................................................... 20

*Turner v. Anheuser-Busch, Inc.*,
   7 Cal. 4th 1238 (1994) .................................................................................. 21

*Vatalaro v. County of Sacramento*,
   79 Cal. App. 5th 367 (2022) .......................................................................... 18

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ................................................................. 15

*West v. Bechtel Corp.*,
    96 Cal. App. 4th 966 (2002) ................................................................ 16

**Statutes**

Cal. Gov. Code § 12940(j)(1) ................................................................. 12

Cal. Gov. Code §12940(k) ...................................................................... 20

Lab. Code § 1102.5 ................................................................................ 18

Lab. Code § 1102.6 ................................................................................ 18

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................... 11, 13

8232056
v

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Defendant Stila Styles, LLC ("Stila") respectfully submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment or alternatively, Partial Summary Judgment ("MSJ") on the grounds there is no triable issue as to any material fact and Stila is entitled to judgment on every count of Plaintiff's Complaint, as a matter of law. In the alternative, Stila moves that the Court summarily adjudicate each claim.[1]

**I.**    <u>**INTRODUCTION**</u>

This is a case that cries out for summary judgment. The undisputed evidence shows Plaintiff was dismissed in November 2023, only after receiving multiple coaching on performance issues, given the benefit of the doubt multiple times for claiming to be at a store sales event when he was not, and being placed on a performance improvement plan, and then exhibited similar deficiencies. All of this occurred well after Plaintiff's unsupported and unreported claims in this lawsuit that he was sexually harassed and is completely attenuated from his conversations in July 2023 that he may be entitled to a higher salary to qualify for exempt status under a California wage order.

In this lawsuit, Plaintiff asserts six separate claims. He alleges: (1) he was sexually harassed during two isolated conferences by an individual who he was openly flirtatious with and called "daddy;" (2) discriminated against because of his sex and/or gender; (3) subjected to retaliation for speaking with Stila's Controller about his salary; (4) Stila failed to prevent his alleged sexual harassment and discrimination; (5) Stila wrongfully terminated him; and, (6) he suffered intentional infliction of emotional distress as a result.

---

[1] Plaintiff filed a stipulation to dismiss individual Defendant Mariano Testa on July 14, 2025. (Dkt No. 25.), which was granted July 15, 2025. (Dkt No. 26.), thus making Stila the only remaining Defendant.

1    However, the undisputed evidence shows that Plaintiff's complaints of alleged
2    sexual harassment in April 2022 and April 2023 by an individual who did not have
3    any supervisory responsibility over or power to evaluate or discipline him were not
4    corroborated by any witness, were not reported by him during his employment
5    (including after the time the employment of the individual in question ended), and
6    were belied by his own behavior including making flirtatious remarks about or toward
7    the individual, and socializing with him. Only after he was dismissed in late
8    November 2023, did Plaintiff for the first time complain about harassment that
9    allegedly occurred in April 2022 and April 2023, and that he was retaliated against
10   for requesting a change in pay in the Summer of 2023.

11   Plaintiff's position as a sales executive required absolute trust that he would be
12   where he said he was going to be, and that the information he provided was truthful
13   and accurate. His failure to do so made Plaintiff's continued employment untenable.
14   Despite Plaintiff taking nine depositions, he cannot submit *any* evidence materially
15   disputing Stila's legitimate, non-discriminatory reasons for its decision to dismiss
16   Plaintiff. Nor can he show that any decision-makers had a discriminatory motive or
17   pretext on account of his sex or gender or that his employment would not have ended
18   for his deficient performance and misrepresentations. Plaintiff's dismissal was a result
19   of his own conduct and dishonesty with his supervisors. In Plaintiff's position, where
20   he worked in the field, Plaintiff's repeated breach of trust meant that he could no
21   longer perform the duties of the role. Stila, for legitimate business reasons, ended his
22   employment.

23   Plaintiff failed to present any evidence, other than his own uncorroborated, self-
24   serving claims, that any of the alleged behavior occurred. There is no supported
25   genuine issue of material fact that could lead a reasonable juror to find any alleged
26   harassment occurred. Plaintiff cannot re-write history. Accordingly, the Court should
27   grant summary judgment in Stila's favor on all claims, or in the alternative grant
28   partial summary judgment.

## II.    FACTUAL BACKGROUND

A review of the undisputed facts demonstrates the absence of an actionable claim.

### A.    Background Regarding Stila.

Stila is a cosmetics company that produces and sells makeup items. It employs a "Field Team," which is tasked with working directly with retailers to support and drive sales and education of Stila's cosmetics. (UF 1.)[2]

Nicole Marr, Stila's Vice President of Field Sales, manages the entire Field Team domestically. (UF 2.) Her direct reports include "Regional Sales Managers" ("RSM") who manage the Field Team in particular geographic regions. (UF 3.) Currently, and at the time of Plaintiff's employment, Charles Miller ("Miller") is the West Coast RSM, and Lidia DeBaise ("DeBaise") is the East Coast RSM. (UF 4.) The RSM's directly supervise the Sales Artistry Executives ("SAEs"). (UF 5.) The SAEs develop and manage a team of freelance makeup artists, and the SAEs and freelance makeup artists assist with the education and sales of Stila cosmetics. (UF 6.)

### B.    Plaintiff Begins Working with Stila.

Near the end of 2021, Plaintiff began working with Miller as a freelance makeup artist. (UF 7.) In March 2022, Miller informed Plaintiff that Stila was opening an SAE position whose territory would encompass the Southern California and San Diego markets. (UF 8.) Plaintiff applied, was interviewed by Miller and Marr, and hired for the SAE position in April 2022. (UF 9.)

#### 1.    Plaintiff Agrees That He Will Report Sexual Harassment and Attends Sexual Harassment Awareness Training.

Upon being hired, Plaintiff acknowledged several of Stila's employment policies, including that he received a copy of, understood, and would comply with,

---

[2] "UF" refers to Stila's Statement of Uncontroverted Facts filed concurrently herewith.

8232056

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1  Stila's Policy Against Harassment. (UF 10.) The policy requires that employees who
2  feel another employee has harassed them should immediately notify their supervisor
3  or manager, human resources, or another member of management. (UF 11.)[3]

4      Plaintiff also completed a sexual harassment awareness training for
5  nonsupervisory employees. (UF 13.) By completing the training, Plaintiff agreed he
6  understood Stila's process for reporting workplace sexual harassment. (UF 14.) He
7  understood he had a duty to report violations of Stila's Policy Against Harassment
8  (UF 15), and that if he felt he was a victim of sexual harassment, he should share that
9  with a manager. (UF 16.)

10      **2.    Plaintiff's Job Duties as an SAE.**

11      As an SAE, Plaintiff was expected to physically visit the stores in his region,
12  conduct trainings, and hold sales events, and was typically "in the field" from
13  Wednesday through Saturday. (UF 17.) While in the field, Plaintiff primarily worked
14  with the retailer Ulta Beauty. (UF 18.) He managed a team of freelance makeup artists
15  who worked within his territory, and conducted trainings, held sales events at retail
16  stores, maintained a presence in stores, and managed day-to-day business with the
17  retailers. (UF 19.)

18      When Plaintiff entered an Ulta Store, he was required to report to the Ulta
19  manager and sign in and out using Ulta's Vendor Log. (UF 20.) Plaintiff, and other
20  members of the Field Team, received periodic reminders, about the requirement to
21  sign in and out of the Vendor Log whenever they entered or left an Ulta Store. (UF
22  21.) For example, on November 13, 2023, Marr emailed the Field Team, including
23  Plaintiff, a reminder that signing into the Ulta Vendor Log is a non-negotiable
24  requirement, and failure to follow the directive may result in disciplinary action. (UF
25  22.) Plaintiff responded to Marr that he would share the message during the team call
26
27  _____
28  [3] Also, Plaintiff acknowledged that he read and would adhere to Stila's Employee
   Handbook. (UF 12.)

1    on November 14, 2023. (UF 23.) Thus, Plaintiff **knew** that signing into the Ulta

2    Vendor Log was a requirement as an SAE, and failure to do so could result in

3    discipline. (UF 24.)

4    Tuesdays were an "in office" day where SAEs are expected to complete reports,

5    including recaps or summaries of events held during the previous week, report sales,

6    balance and confirm funds left for their freelancer budget for the month, submit

7    expenses for reimbursement, and ensure their calendar and schedule were updated.

8    (UF 25.) On Tuesdays, the SAEs typically attended a meeting conducted by Marr,

9    and attended one-on-one meetings with their direct RSM. (UF 26.)[4]

10    **C.    Plaintiff Attends the 2022 Ulta Event and Does Not Report Any**

11    **Alleged Harassment.**

12    Stila sends employees to the annual Ulta FLC ("Ulta Event"). (UF 28.) The

13    Ulta Event is a conference, typically held around April, by the retailer Ulta Beauty,

14    during which time Stila hosts a booth and presents its products to Ulta personnel. (UF

15    29.)

16    In 2022, Plaintiff attended the Ulta Event. (UF 30.) Mariano Testa ("Testa"),

17    Stila's recently hired Chief Creative Officer, also attended the event for a short part

18    of the time. (UF 31.) Plaintiff claims Testa harassed him at this event. However, Stila

19    employees who attended the event did not witness Testa engage in any inappropriate

20    behavior of a sexual nature towards Plaintiff. (UF 32.) Testa does not even recall

21    meeting Plaintiff during the 2022 Ulta Event. He denies engaging in any inappropriate

22    behavior towards Plaintiff at any time. (UF 33.)

23    If Plaintiff had an issue with Testa, he certainly did not show it by his conduct.

24    Plaintiff did not personally interact with Testa before the 2022 Ulta Event, and did

25    not personally interact with him after the 2022 Ulta Event or before the 2023 Ulta

26

27    [4] Contrary to Plaintiff's (irrelevant) claims, there was no contest in 2023 where the

28    field staff member with the highest sales would receive a trip to New York City
Fashion Week, nor was Plaintiff the highest salesperson during that time. (UF 27.)

Event. (UF 34.) Plaintiff did not tell Marr, Miller, DeBaise, or anyone in management that Testa engaged in inappropriate behavior towards him during the 2022 Ulta Event, or at any point thereafter during his employment. (UF 35.) He did not express any reluctance to management about working with Testa at the April 2023 Ulta Event. (UF 36.)

> **D.** **Plaintiff Attends the 2023 Ulta Event in Vegas, Repeatedly Calls Testa "Daddy," and Makes Inappropriate Comments About Testa.**

The 2023 Ulta Event was Las Vegas over a span of approximately four to five days. (UF 37.) Plaintiff attended, along with Kluz, Marr, DeBaise, Stant, Maggie Krzeptowska ("Krzeptowska"), Elizabeth Jensen ("Jensen"), and Testa. (UF 38.)

During the 2023 Ulta Event, multiple witnesses testified that Plaintiff made a number of inappropriate comments to and about Testa:

- Plaintiff approached Stila's CEO Kluz while setting up the conference booth and said "Oh, Mariano has a tasty a** and I want to rub up against that." Kluz told him she did not think it was appropriate to discuss another employee that way, and what he chose to do consensually on his own time was his business. (UF 39.)

- Testa related that Plaintiff called him "daddy" a few times while he was in Las Vegas. (UF 41.), which Testa said is a code word in the gay community to express a type of sexual interest. (UF 40.) Several witnesses corroborated Plaintiff's use of the daddy term:

  - According to a co-worker, Krzeptowska, Plaintiff referred to Testa as "daddy," several times. (UF 42.) Plaintiff bragged to Krzeptowska that "daddy," meaning Testa, invited him back to his hotel room during the 2022 Ulta Event. (UF 43.)

  - Plaintiff called Testa "daddy" in front of Lidia DeBaise. (UF 44.)

  - Plaintiff called Testa "daddy" in front of Haley Stant approximately ten times. (UF 45.) In a gossipy manner, Plaintiff also leaned over

and whispered in Stant's ear that, Testa had invited Plaintiff to his hotel room at the 2022 event. (UF 46.)

- Another coworker, Jensen, testified that Plaintiff flirted with Testa during the event. (UF 47.)

- Plaintiff went to two different bars with Testa, Jensen, and Krzeptowska, in the evening after the Ulta Event finished for the day. (UF 48.)

Significantly, other Stila attendees confirmed they did not witness Testa engage in inappropriate behavior towards Plaintiff during the 2023 Ulta Event. (UF 49.) Testa also denied engaging in any such conduct at any time. (UF 52, 53.)

Plaintiff had no further interactions or communications with Testa after the 2023 Ulta Event. (UF 54.) Testa worked in a different department than Plaintiff. He had no supervisory, evaluative, or disciplinary authority over Plaintiff or any of the field team and was not involved in the decision to dismiss Plaintiff. In fact, Testa left the company more than four months prior to Plaintiff's dismissal. (UF 55.)

E.    **Plaintiff Contacts Tuey Regarding a New California Law on July 18, 2023.**

Plaintiff emailed Controller Karen Tuey ("Tuey") on July 18, 2023, asking whether she knew about the new exempt employee law in California. (UF 56.) Tuey informed Plaintiff she would check with Stila's third-party human resources consultant company ADP and would follow up. (UF 57.) On July 21, Tuey told Plaintiff his salary would be increased, and Stila would provide backpay for the difference between his new and old salary in 2023. (UF 58.) Plaintiff thanked Tuey for resolving the matter. (UF 59.)

F.    **Plaintiff is Not at the Burbank Ulta Store When He Reported He Would Be There.**

Within the last six months of Plaintiff's employment, Marr went to the Burbank Ulta store when Plaintiff was scheduled to be there. (UF 60.) When she arrived, Plaintiff was not in the store. She saw one of the freelance makeup artists on Plaintiff's

8232056

7

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1  team training another freelance artist. (UF 61.) When Marr followed up with Plaintiff,
2  he claimed he went to another store and did not update his schedule. (UF 62.) At the
3  time, Marr chose to take Plaintiff at his word. (UF 63.) She still coached Plaintiff that
4  having two freelance artists in the same store was a waste of payroll, and that he
5  should not have freelance artists train other freelancers. (UF 64.)

6       **G.**    **On September 29, 2023, Plaintiff is Not at the Sherman Oaks Ulta**
7                **Store as Scheduled.**

8       Nevertheless, on September 29, 2023, Marr went to the Sherman Oaks Ulta
9  Store during a time Plaintiff was scheduled to be there. (UF 65.) Plaintiff was not in
10  the store, although his two freelancers were. (UF 66.) Plaintiff told Marr he was not
11  there because he was dropping off supplies for an event. (UF 67.) Marr again coached
12  Plaintiff regarding having two freelancers in a store, and again chose to give Plaintiff
13  the benefit of the doubt. (UF 68.)

14       **H.**    **October 24, 2023, Plaintiff is Placed on a Performance**
15                **Improvement Plan.**

16       For several months, Miller and Marr coached Plaintiff regarding areas where
17  he needed to improve his performance, including improving his business acumen,
18  scheduling, time management, completing his reports and deliverables in a timely
19  manner, and better managing his freelance payroll. Despite this coaching, Plaintiff
20  failed to improve. (UF 69.) He was placed on a Performance Improvement Plan
21  ("PIP") as a result on or about October 24, 2023. (UF 70.) Marr placed Plaintiff on
22  the PIP hoping he would improve his performance; it was not disciplinary, and she
23  had not yet decided to recommend dismissal. (UF 71.) Plaintiff consulted with an
24  attorney before he was placed on a PIP in October. (UF 72.) However, despite
25  speaking with a lawyer, he did not complain about Testa until *after* his employment
26  ended.

27
28

I.   **November 18, 2023, Plaintiff Submits Inconsistent Sales Numbers and Is Not at the Cerritos Store Event.**

On November 18, 2023, Plaintiff was scheduled to hold a sales event at the Cerritos Ulta Store. Plaintiff reported he personally sold $600 at the event, but the store reported it had sold $450 for the entire week! Marr asked Plaintiff about the discrepancy. He told Marr it was a slow day because of the rain. (UF 73.)

Marr then contacted the store, and discovered Plaintiff had not signed in or out of the Ulta Vendor Log. (UF 74.) Marr contacted the freelance artists who were at the store, and both confirmed Plaintiff was not there. (UF 75.)

Marr followed up with Plaintiff again. Plaintiff admitted he had not signed the Vendor Log, but claimed he was initially at the store and left because one of his freelance artists had a medical emergency. (UF 76.)

Even assuming, *arguendo*, that Plaintiff's claim is true, Plaintiff admitted he was not at the store for the entire scheduled time and did not sign in to the Vendor Log despite Marr reminding him *five days prior* that doing so was required. (UF 77.) Moreover, Plaintiff again scheduled two freelance artists, in addition to himself, for the event, despite prior instruction not to schedule two freelancers for events. (UF 78.)

J.   **On November 25, 2023, Plaintiff is Not at the Seal Beach Store Event.**

After the Cerritos incident, Marr lost trust in Plaintiff. (UF 79.) She began to more closely review Plaintiff's records and found he frequently scheduled two freelance artists in the same store, despite her prior instructions. (UF 80.)

Plaintiff was scheduled to hold an event in the Seal Beach Ulta Store on Saturday, November 25, 2023, beginning at 10:00 a.m. (UF 81.) Marr called the Seal Beach Ulta Store, at 12:30 p.m., and asked whether anyone from Stila was working there. (UF 82.) They checked the Ulta Vendor Log, looked out at the store, and confirmed no one from Stila was there. (UF 83.)

1  Marr contacted Plaintiff, and told him she called the store, and learned he was
2  not there. (UF 84.)[5] Plaintiff did not respond for 20-30 minutes. Then he texted a
3  photo of an Ulta Vendor Log stating that he was there from 11:00 – 6:00 p.m. (UF
4  86.) Marr did not consider this material as proof Plaintiff was at the store as claimed.
5  For instance, there was no photo showing a separate sign in or sign out time on the
6  log. (UF 87.)

7  **K.    Plaintiff is Dismissed.**

8  Following the Seal Beach incident, Marr began the process to recommend
9  Plaintiff's dismissal. (UF 88.) Marr contacted Tuey to discuss logistics that needed to
10 be resolved before dismissing Plaintiff, including confirming whether Plaintiff was
11 owed any reimbursements and how quickly his final paycheck could be issued. (UF
12 89.) [6]

13 Marr then contacted Stila's CEO, Michelle Kluz, and shared her
14 recommendation to dismiss Plaintiff. (UF 91.) Kluz agreed with Marr's
15 recommendation. (UF 92.) On November 29, 2023, Marr, Tuey, and Miller met with
16 Plaintiff via videoconference, and informed Plaintiff he was being dismissed. (UF
17 93.)

18 **L.    Plaintiff Contacts Tuey on December 4, 2023 Regarding Backpay**
19 **for 2022.**

20 On December 4, 2023, Plaintiff and Tuey had a conversation regarding
21 Plaintiff's 2022 salary. (UF 94.) That same day, Tuey informed Plaintiff that Stila
22 would process a direct deposit for nine months of backpay to Plaintiff for his 2022
23 salary. (UF 95.)

24
25
26

27 [5] At the time, Marr believed that Plaintiff lived close to the Seal Beach Store. (UF 85.)
28 [6] Tuey did not recommend or decide to dismiss Plaintiff. (UF 90.)

8232056

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 1 | **M.    Since His Dismissal, Plaintiff Has Not Sought Mental Health** |
| 2 | **Treatment and Earns More Money in a New Position.** |
| 3 | Since Plaintiff's dismissal, he has not engaged or spoken to any therapist, |
| 4 | counselor, or mental health specialist, and is not taking any prescription drugs other |
| 5 | than for ADHD and allergies. (UF 96.) Plaintiff has been ready, willing, and able to |
| 6 | work without restriction since his dismissal. (UF 97.) He has been employed by |
| 7 | Sunday Riley Modern Skincare since December 2, 2024, and is making more money |
| 8 | than what he was earning while employed with Stila. (UF 98.) |
| 9 | **III.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT** |
| 10 | Summary judgment should be granted "if the movant shows that there is no |
| 11 | genuine dispute as to any material fact and the movant is entitled to judgment as a |
| 12 | matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the |
| 13 | outcome of a case under the applicable substantive law. *Anderson v. Liberty Lobby,* |
| 14 | *Inc.*, 477 U.S. 242, 248 (1986). Irrelevant or unnecessary factual disputes are not |
| 15 | material. *Id.* A dispute about a material fact is "genuine" only if there is sufficient |
| 16 | evidentiary basis for a reasonable factfinder to return a verdict for the non-moving |
| 17 | party. *Id.* Mere arguments or allegations are insufficient to defeat a properly supported |
| 18 | motion for summary judgment; the nonmovant must present more than a scintilla of |
| 19 | evidence and must advance specific facts to create a genuine issue of material fact for |
| 20 | trial. *Id.* at 248-51. The party moving for summary judgment bears the initial burden |
| 21 | of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.* |
| 22 | *Catrett*, 477 U.S. 317, 323 (1986). |
| 23 | "[F]ederal courts sitting in diversity apply state substantive law and federal |
| 24 | procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). In |
| 25 | diversity actions, the state law creating the right sued upon governs. *See Clausen v.* |
| 26 | *M/V NEW CARISSA*, 339 F.3d 1049, 1065 (9th Cir. 2003). Because Plaintiff brought |
| 27 | his Complaint under the California Fair Employment and Housing Act ("FEHA"), the |
| 28 | |

8232056

11

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1  California Government Code, California Labor Code, and California common law,
2  California law applies.

3  **IV.    ARGUMENT[7]**

4          **A.    Plaintiff's Harassment Claims Fail.**

5          Under the FEHA, it is unlawful "[f]or an employer ... or any other person,
6  because of ... sex, gender ... to harass an employee ...." Cal. Gov. Code § 12940(j)(1).
7  To establish a *prima facie* case of a hostile work environment harassment claim based
8  on sex and/or gender, a plaintiff must show that the conduct was "(1) unwelcome; (2)
9  because of sex; and, (3) sufficiently severe or pervasive or alter the conditions of her
10 employment and create an abusive work environment." *Lyle v. Warner Brothers*
11 *Television Productions*, 38 Cal. 4th 264, 279 (2006) (citations omitted).

12         Critically, a plaintiff must show a "concerted pattern of harassment of a
13 repeated, routine or a generalized nature." *Id.* at 283. Unless conduct is "severe in the
14 extreme," "[o]ccasional, isolated, sporadic, or trivial" acts are usually not enough to
15 alter the conditions of employment and create a hostile work environment. *Hughes v.*
16 *Pair*, 46 Cal. 4th 1035, 1043 (2009).

17         "For sexual harassment to be actionable, it must be sufficiently severe or
18 pervasive 'to alter the conditions of [the victim's] employment and create an abusive
19 working environment.' . . . 'Conduct that is not severe or pervasive enough to create an
20 objectively hostile or abusive work environment—an environment that a reasonable
21 person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the
22 victim does not subjectively perceive the environment to be abusive, the conduct has
23 not actually altered the conditions of the victim's employment, and there is no Title VII
24 violation.' . . . California courts have adopted the same standard in evaluating claims
25 under the FEHA." *Aguilar v. Avis Rent-A-Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999).

26

27 _____

28 [7] For the Court's convenience, Stila has organized its legal arguments to correspond
   with the order of the counts in Plaintiff's Complaint.

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1.    **<u>Plaintiff Fails to Prove that Testa Engaged in Any Severe or Pervasive Conduct Altering the Conditions of His Employment.</u>**

Testa was in a completely different department than Plaintiff, and did not have any oversight, management, or disciplinary authority over Plaintiff. He also left the company several months before Plaintiff was let go, further evidencing that he was not in any way involved in any discipline of Plaintiff. No reasonable factfinder could find that Testa altered the conditions of Plaintiff's employment. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248; *Aguilar*, 21 Cal. 4th at 129-30.

Moreover, Plaintiff did not personally interact with Testa other than during the 2022 and 2023 Ulta Events. Thus, Plaintiff's daily work activities were not impacted by Testa. Plaintiff's and Testa's interactions were isolated, and personal interactions were limited to the 2022 and 2023 Ulta events.

Tellingly, Plaintiff did not raise any concerns about Testa's behavior to his supervisors, nor did he object to attending the 2023 conference, although he now claims he was subjected to harassing behavior at the 2022 Ulta Event. In fact, Plaintiff's actions during the 2023 Ulta Event clearly demonstrate he did not find any alleged behavior of Testa to be unwelcome, hostile, or abusive. Belying any argument by Plaintiff that he found any comments or actions of Testa harassing are the undisputed facts that Plaintiff used inappropriate language himself when speaking to and referring to Testa, confirmed by several witnesses. If Plaintiff found any conduct of Testa's unwelcome, he would not have bragged about an alleged invite by Testa to his coworkers in 2023. He would not have gone out to a bar with Testa and several coworkers while in Las Vegas, or made comments about Testa's a\*\* **to the CEO** at the 2023 Ulta Event.

Even assuming, *arguendo*, that Plaintiff was concerned about potential retaliation from Testa, the fact remains that Plaintiff knew Stila's processes to report harassment, and did not do so at any time during his employment, even after he was

placed on a PIP or on the day he was dismissed. Plaintiff even had ample time (more than four months) during his remaining employment to report any concerns about Testa after Testa ceased employment. He did nothing until after he was dismissed.

Further, multiple Stila attendees at the 2022 and 2023 Ulta Events, confirmed they *did not* witness Testa engage in any inappropriate behavior towards Plaintiff during the conference. This is despite the fact that all attendees were in the same booth together during the conference, and attended social gatherings together as a group.

The exclusive "support" for Plaintiff's claims are his own self-serving, contradictory statements. Any reasonable factfinder could not overlook the fact that Plaintiff's outlandish claims raised in his Complaint would have been witnessed by one of the many other attendees in the same area where he claimed they occurred.

After taking nine depositions, Plaintiff still fails to present *any* evidence beyond his own conclusory allegations to establish a genuine material fact that Testa engaged in severe or pervasive conduct. Accordingly, the claim fails.

### B.  Plaintiff Cannot Establish a Case of Sex/Gender Discrimination under FEHA.

California analyzes claims of discrimination under the FEHA using a three-step framework, commonly referred to as the *McDonnell-Douglas* burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-03 (1973). To establish his *prima facia* burden, Plaintiff must demonstrate: (1) at the time of the adverse action, he was a member of a protected class; (2) he was competently performing in his position; (3) an adverse employment action was taken against him; and (4) the circumstances of the adverse employment action suggest a discriminatory motive. *Hersant v. Department of Social Services*, 57 Cal. App. 4th 997, 1002-03 (1997).

If a *prima facie* case is established, defendant has the burden to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* at 1002. The defendant's reason need not be a wise or correct decision, but must simply be a non-

discriminatory reason. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Once the defendant asserts a facially legitimate business reason for the challenged action, the burden shifts to the plaintiff to prove the proffered reason is a pretext for discrimination. *Id.* at 1062. "The plaintiff must do more than raise the inference that the employer's asserted reason is false. '[A] reason cannot be provided to be a 'pretext *for discrimination*' unless it is shown *both* that the reason is false, *and* that discrimination was the real reason." *Hicks v. KNT Television, Inc.*, 160 Cal. App. 4th 994, 1003 (2008) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993)).

To avoid summary adjudication, Plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 807 (1999) (quoting *Bradley v. Harcourt, Brace and Co*, 104 F.3d 267, 270 (9th Cir. 1996)). Plaintiff must produce "specific substantial evidence of pretext." *Id.* Mere speculation of discriminatory motive and intent, without substantial factual evidence, is insufficient to avoid summary adjudication. *Martin v. Lockheed Missiles & Space Company, Inc.*, 29 Cal. App. 4th 1718, 1735 (1994); *Horn*, 72 Cal. App. 4th at 807 ("We emphasize that an issue of fact can only be created by a conflict of evidence. It is not created by speculation or conjecture.") The ultimate burden of persuasion remains with Plaintiff. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 356 (2000).

### 1. Stila Dismissed Plaintiff for Legitimate, Non-Discriminatory Reasons.

Plaintiff cannot contest that Stila believed he was not performing competently in his position. Plaintiff received a ("PIP") in October 2023, after receiving multiple coaching sessions from both Miller and Marr regarding his need to improve areas of his performance. While on the PIP, Plaintiff continued to disregard coaching about overscheduling freelance artists for events and not signing the Vendor Log. He cannot contest he was not at the scheduled Burbank and Sherman Oaks Ulta store events

8232056

15

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1  when Marr visited the stores or called. He cannot contest that he was not at the entire

2  scheduled event for the Cerritos and Seal Beach Stores in November 2023. Even if

3  Plaintiff asserted excuses for why he was not at a particular store at a certain time, it

4  is undisputed that Plaintiff repeatedly was not where he was scheduled on several

5  occasions shortly before his dismissal and did not always follow the required log in

6  procedures. Nor can he contest that Marr did not believe what Plaintiff was telling her

7  based on the information she had at the time and his prior history of being missing

8  from stores on days he was scheduled there.

9       Significantly, at no point in Plaintiff's Complaint, or during discovery, has

10  Plaintiff alleged with any specificity *how* he was terminated from employment, or

11  subjected to any other adverse action, *because of his sex or gender*. There is no

12  suggestion, even made by Plaintiff, that the decision to dismiss him was based on sex

13  or gender. *Hersant*, 57 Cal. App. 4th at 1002. As such his *prima facie* case of

14  discrimination fails.

15           **2.    There is No Evidence of a Discriminatory Motive.**

16       Stila employed Plaintiff for a short period of time, from April 2022 until

17  November 2023. Significantly, Marr was involved in both the decision to hire Plaintiff

18  and to dismiss him. When the same individual "is responsible for both the hiring and

19  the firing of a discrimination plaintiff, and both actions occur within a short period of

20  time, a strong inference arises that there was no discriminatory motive." *West v.*

21  *Bechtel Corp.*, 96 Cal. App. 4th 966, 980 (2002) (citing *Horn*, 72 Cal. App. 4th at 809

22  (finding that the inference applied even though five years passed between the hiring

23  and termination.).) If Marr had discriminatory bias towards Plaintiff because of his

24  sex and/or gender, she would not have recommended hiring him in the first place. She

25  clearly did not.

26       Plaintiff also cannot infer a discriminatory motive from Stila's actions. *Scaf v.*

27  *D.B. Log Homes, Inc.*, 128 Cal. App. 4th 510, 1518-19 (2005). There is no evidence

28  of direct discrimination, as neither decision-maker for Plaintiff's dismissal (Marr and

1 Kluz), said anything discriminatory to Plaintiff regarding his sex or gender. Therefore,
2 Plaintiff must prove sex/gender discrimination circumstantially. He cannot.

3      Employees can be fired for "a good reason, a bad reason, a reason based on
4 erroneous facts, or for no reason at all, as long as its action is not for a discriminatory
5 reason…" "While an employer's judgment … may seem poor or erroneous to
6 outsiders, the relevant question is … whether the given reason was a pretext for illegal
7 discrimination. The employer's stated legitimate reason … does not have to be a
8 reason that the judge … would act on or approve." *Arteaga v. Brinks, Inc.*, 163 Cal.
9 App. 4th 327, 344 (2008).

10      Here, Marr recommended Plaintiff's dismissal after additional performance
11 issues. She believed Plaintiff was not in the stores where he claimed he would be, and
12 she could no longer trust him in the SAE role. Kluz agreed with Marr's
13 recommendation. Even assuming, *arguendo*, that Plaintiff actually was at those stores,
14 he cannot point to any evidence that Marr or Kluz believed otherwise, or acted for a
15 discriminatory reason *based on his sex or gender* when they decided to dismiss him.
16 *Id.*

17      **3.    Plaintiff Cannot Present Substantial Evidence of Pretext.**

18      To avoid summary judgment, Plaintiff must present "substantial" evidence of
19 *the specific elements at issue. Sangster v. Paetkau*, 68 Cal. App. 4th 151, 162-63
20 (1998) (emphasis added.) "[I]f the word 'substantial' means anything at all, it clearly
21 implies that such evidence must be of ponderable legal significance. Obviously, the
22 word cannot be deemed synonymous with 'any' evidence. It must be reasonable in
23 nature, credible, and of solid value; it must actually be 'substantial proof' of the
24 essentials which the law requires in a particular case." *Joaquin v. City of Los Angeles*,
25 202 Cal. App. 4th 1207, 1218-19 (2012). "[R]esponsive evidence that gives rise to no
26 more than mere speculation cannot be regarded as substantial, and is insufficient to
27 establish a triable issue of material fact." *Sangster*, 68 Cal. App. 4th at 162-63.

28

8232056

17

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

Plaintiff "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Horn*, 72 Cal. App. 4th at 806-07. Plaintiff must produce "specific substantial evidence of pretext." *Id*. Protestations of discriminatory motive and intent, without substantial factual evidence, do not raise issues precluding summary judgment. *Martin*, 29 Cal. App. 4th at 1735.

It is impossible for Plaintiff to present any evidence, let alone *substantial evidence*, reflecting that Stila's dismissal decision was false, or presented such weaknesses, implausibility, inconsistencies, incoherencies, or contradictions that a trier of fact could rationally find the employment decision not credible. *Scotch v. Art Institute of California*, 173 Cal. App. 4th 986, 1007 (2009).

Plaintiff fails to present substantial evidence that either Marr or Kluz treated Plaintiff differently *because of* his sex and/or gender. Thus, Plaintiff cannot prove Stila's decision was pretextual, and Plaintiff's discrimination claim fails.

### C. <u>Plaintiff's Labor Code 1102.5 Whistleblower Retaliation Claim Fails.</u>

Labor Code 1102.5 prohibits retaliation against an employee who engages in a protected activity, as defined under the statute. A plaintiff must plead: (1) they engaged in protected activity; (2) defendant subjected them to an adverse employment action; and, (3) there is a causal link between the two. *Edgerly v. City of Oakland*, 211 Cal. App. 4th 1191, 1205 (2012). Labor Code 1102.5 also includes a burden-shifting analysis. Plaintiff has the initial burden to establish "by a preponderance of the evidence that an activity proscribed in Section 1102.5 was a contributing factor in the alleged prohibited action against the employee." Lab. Code § 1102.6. If the plaintiff meets the initial burden, the burden shifts to the defendant to show "by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Lawson v. PPG Architectural Finishes. Inc.*, 12 Cal. 5th 703, 718 (2022); *see also* Lab. Code § 1102.6; *see also Vatalaro v. County of Sacramento*, 79 Cal. App. 5th 367, 386

(2022) (summary judgment on a whistleblower claim is proper where the employer demonstrates by clear and convincing evidence that it would have taken the alleged unlawful action for legitimate, independent reasons, even if plaintiff had not engaged in the allegedly protected conduct.)

>    1.    <u>**Plaintiff Fails to Identify Any Nexus Between His November Dismissal and His July Discussion with Tuey Regarding the New California Law.**</u>

Plaintiff claims he engaged in protected activity when he spoke with Tuey regarding his salary. However, he cannot establish any evidence of a nexus between his July 21, 2023 salary increase and back payment, and his November 29, 2023 dismissal.

Tuey worked with Plaintiff to increase his salary and issued him backpay in July 2023, *more than four months* before his dismissal.[8] This is far too attenuated in time.

"Temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." *Arteaga*, 163 Cal. App. 4th at 354. In *Arteaga*, the Court held that an employee's termination resulting *less than one week* after the employee disclosed his disability did not raise a material dispute as to the company's "true motivation." *Id*. at 353. Here, Plaintiff's dismissal, which occurred over four months after he spoke with Tuey, is temporally attenuated and a completely separate issue. In between, there were multiple performance deficiencies that merited dismissal, but instead Plaintiff received the benefit of the doubt and was provided opportunities to perform his duties as required.

To prove retaliation, Plaintiff must show something "more" than that he was dismissed sometime after engaging in protected behavior. He cannot. Marr and Kluz's

---

[8] Plaintiff's request for backpay for his 2022 salary did not occur until *after* he was dismissed, making it is impossible use as evidence of a purported retaliatory motive.

1  decision to dismiss Plaintiff was for legitimate, non-retaliatory, reasons (discussed

2  further in Section IV(B)(1)), and the decision would have been made regardless of his

3  conversation with Tuey. Plaintiff fails to show *how* Marr and Kluz's decision to let

4  him go from his employment was made because of any discussions regarding his

5  salary.

6      Thus, Plaintiff's retaliation claim fails.

7      **D.    Plaintiff's Failure to Prevent Harassment and Discrimination**

8      **Claim Fails Because the Underlying Claims Fail. [9]**

9      To establish a *prima facie* case for failure to prevent harassment or

10  discrimination, a plaintiff must show (1) actionable harassment or discrimination; (2)

11  that the defendant failed to take all reasonable steps to prevent the harm; and (3) that

12  the plaintiff suffered injury, damage, loss or harm because of the defendant's alleged

13  conduct. Cal. Gov. Code §12940(k); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d

14  781, 804 (N.D. Cal. 2015). Importantly, there can be no liability for an employer's

15  failure to prevent harassment or discrimination unless actionable harassment or

16  discrimination occurred. *Trujillo v. North County Transit District*, 63 Cal. App. 4th

17  280, 284 (Cal. Ct. App. 1998) ("[T]here's no logic that says an employee who has not

18  been discriminated against can sue an employer for not preventing discrimination that

19  didn't happen, for not having a policy to prevent discrimination when no

20  discrimination occurred.)"

21      Because, as discussed above, Plaintiff cannot establish claims for harassment

22  or discrimination against Stila, Plaintiff's failure to prevent claims fail.

23

24

25

26  _____

27  [9] During the Parties' meet and confer efforts, Plaintiff's counsel clarified that
Plaintiff's fourth cause of action is for failure to prevent harassment and

28  discrimination under the FEHA.

8232056

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

1      E.      **Plaintiff's Claim for Wrongful Termination in Violation of Public**

2              **Policy Fails.**

3      Plaintiff's wrongful termination claim fails because he cannot show a violation

4   of an underlying statutory scheme. *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238,

5   1256-1257 (1994); *Sequoia Insurance v. Superior Court*, 13 Cal. App. 4th 1472, 1475

6   (1993) (public policy claim based upon FEHA cannot proceed where facts do not

7   support the underlying statutory claim).

8      Plaintiff's claim for wrongful termination is derivative of his harassment and

9   discrimination claims under the FEHA, and retaliation under the Labor Code. Thus,

10  his claim for wrongful termination fails for the same reasons.

11     F.      **Plaintiff's Claim for Intentional Infliction of Emotional Distress**

12             **("IIED") Fails.**

13     To survive summary judgment on the IIED claim, Plaintiff must show there is

14  a material factual dispute regarding whether: (1) Stila engaged in extreme and

15  outrageous conduct with the intention of causing, or reckless disregard for the

16  probability of causing, emotional distress; (2) plaintiff suffered severe or extreme

17  emotional distress; and (3) there is actual and proximate causation of the emotional

18  distress by the defendant's outrageous conduct. *Hughes*, 46 Cal. 4th at 1050. "A

19  defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of

20  that usually tolerated in a civilized society." *Id.* at 1050-51. Liability "does not extend

21  to mere insults, indignities, threats, annoyances, petty oppressions, or other

22  trivialities." *Id.* at 1051. The conduct must be either intentional or reckless, and so

23  extreme as to exceed all bounds of decency in a civilized community. *Potter v.*

24  *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993).

25     Courts have specifically held that employment-related actions are *not* "extreme

26  and outrageous conduct" pursuant to IIED. *Hughes*, 46 Cal. 4th at 1050. Courts

27  recognize that "[a]n employer's supervisory conduct is inherently 'intentional,'…

28  [and] it would be unusual for an employee *not* to suffer emotional distress as a result

8232056                                        21

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

of an unfavorable decision by his employer." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (1987) (emphasis in original).  Thus, "when the misconduct attributed to the employer's actions which are a normal part of the employment relationship, such as demotions, promotions, [and] criticism of work practices, … an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." *Id*.

Personnel management decisions, even if improper, are not extreme and outrageous conduct. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient evidence for a claim of intentional infliction of emotional distress, even if improper motivation is alleged.").

### 1.     Plaintiff Fails to Show that Stila Engaged in Extreme or Outrageous Conduct.

Stila's actions taken against Plaintiff were legitimate and non-discriminatory personnel management decisions made after Plaintiff failed to follow his employer's directives. Plaintiff's own testimony that he has not sought any mental health treatment since he left his employment in November 2023, and makes more money in his current employment, supports that he has not suffered severe or extreme emotional distress from Stila's personnel decisions.

Further, Plaintiff's behavior towards Testa during the 2023 Ulta Events, discussed in Section IV(A)(1), supports that no reasonable jury that could find that Plaintiff was undergoing severe or extreme emotional distress.

Thus, Plaintiff cannot prove Stila's actions meet the high bar of being extreme or outrageous conduct. His IIED claim therefore fails.

1 | **V.**    <u>**CONCLUSION**</u>

2      For the foregoing reasons as set forth above, Stila respectfully requests that the

3 Court grant summary judgment as to the entirety of Plaintiff's claims against Stila. In

4 the alternative, the Court should grant partial summary judgment.

5

6 DATED: August 15, 2025         **THOMPSON COBURN LLP**

7

8

9                   By: _Cara Strike_

10                      **JOHN L. VIOLA**

                     **CARA A. STRIKE**

11                      **CHARLES M. POPLSTEIN** *(pro hac vice)*

                     Attorneys for Defendant

12                      STILA STYLES, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

## LOCAL RULE 7-3 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant Stila Styles, LLC hereby certifies they met and conferred with counsel for Plaintiff Daniel Medina via telephonic conference on August 8, and August 14, 2025 relating to this Motion. Despite a good faith effort, the parties could not resolve the issues without court action.

DATED:  August 15, 2025          **THOMPSON COBURN LLP**

By: *Cara Strike*

**JOHN L. VIOLA**
**CARA A. STRIKE**
**CHARLES M. POPLSTEIN** *(pro hac vice)*
Attorneys for Defendant
STILA STYLES, LLC

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Stila Styles, LLC certifies that this brief contains 6,942 words, which complies with the word limit of L.R. 11-6.1

DATED:  August 15, 2025          **THOMPSON COBURN LLP**


By: *Cara Strike*
_____
**JOHN L. VIOLA**
**CARA A. STRIKE**
**CHARLES M. POPLSTEIN** *(pro hac vice)*
Attorneys for Defendant
STILA STYLES, LLC

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

  At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 10100 Santa Monica Boulevard, Suite 500, Los Angeles, California 90067.

  On August 15, 2025, I served true copies of the following document(s) described as **MEMORANDUM OF DEFENDANT STILA STYLES, LLC IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT** on the interested parties in this action as follows:

Ranojoy Guha        Attorneys for Plaintiff DANIEL
EMPLOYEE CIVIL RIGHTS GROUP   MEDINA
3415 S. Sepulveda Boulevard, Suite 1100
Los Angeles, CA 90034
(310) 598-1524
raj@employeecivilrightsgroup.com
raj@guhalaw.com
alexa@employeecivilrightsgroup.com

  **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

  Executed on August 15, 2025, at Los Angeles, California.

            _Catherine C. Mamayson_
            Catherine C. Mamayson

8232056