# Exhibit 14

```
 1           IN THE UNITED STATES DISTRICT COURT

 2        FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                          - - -

 4   DANIEL MEDINA, an      )  CIVIL DIVISION
     individual,           )
 5                         )  Case No.:
              Plaintiff,    )  2:24-cv-06340-FLA-RAO
 6                         )
          vs.              )  Hon. Judge Fernando L.
 7                         )      Aenlle-Rocha
     STILA STYLES, LLC,     )
 8   a Delaware limited     )  Remote Video Deposition of:
     liability company;     )  MICHELLE KLUZ
 9   and DOES 1-25,         )
     inclusive,            )  Filed on Behalf of the
10                         )      Plaintiff
          Defendants.      )
11                         )  Counsel of Record for
                           )      This Party:
12                         )
                           )  Ranojoy Guha, Esq.
13                         )  EMPLOYEE CIVIL RIGHTS GROUP
                           )  3415 S. Sepulveda Blvd.
14                         )  Suite 1110
                           )  Los Angeles, CA 90034
15

16                          - - -

17

18

19

20

21

22

23

24

25
```

Exhibit 14, Page 99

```
 1    difficult, but I just want to understand the

 2    parameters of your knowledge.

 3              All right.  So, now, you went

 4    through several categories of performance

 5    issues.  Well, I guess before I -- did you

 6    review any documents in order to prepare for

 7    your testimony here today?

 8         A.    Yes.

 9         Q.    Okay.  And I don't need to know the

10    contents of any communication between you and

11    your attorney.  But, aside from that, did you

12    review any documents?

13         A.    Yes.

14         Q.    What documents did you review?

15         A.    I reviewed the depositions --

16    skimmed -- of Ms. Nicole Marr and Karen Tuey.

17         Q.    Did you find Ms. Marr's testimony

18    accurate with respect to your involvement in

19    Daniel's termination?

20         A.    Yes.

21              ATTORNEY POPLSTEIN:  Objection

22    to form.  Legal conclusion.  Pardon me.

23    BY ATTORNEY GUHA:

24         Q.    And I think your response was "yes";

25    right, Ms. Kluz?
```

MICHELLE KLUZ                                                      JOB NO. 1880149
AUGUST 08, 2025

```
 1        A.    We run 20 events a week, and I've

 2   been here for three years.  And I -- I wouldn't

 3   know the details.

 4        Q.    Yeah.  That's fair.

 5              So, now, after Seal Beach -- well,

 6   did she call you over the phone?  Or was there

 7   a video conference between the two of you where

 8   you discussed this?

 9        A.    I don't recall exactly.

10        Q.    Okay.  What did you recommend once

11   she informed you about these --

12        A.    Termination.

13        Q.    Immediately?

14        A.    Yes.

15        Q.    Do you know how long after that

16   Daniel was terminated?

17        A.    It was several days.

18              And I was angry.  But she said that

19   because of -- there was some reason; I do not

20   recall what it is -- but she had to give it a

21   few days.  I didn't want him representing

22   Stila, in any way or form, as soon as we knew.

23        Q.    Did she tell you that he knew one of

24   his -- I'm sorry.  Did she tell you about any

25   relative of his that was ill around the time of
```

MICHELLE KLUZ                                                              JOB NO. 1880149
AUGUST 08, 2025

```
 1    who isn't, and, you know, how it comes to

 2    light.

 3         Q.    Okay.

 4                   ATTORNEY GUHA:   All right.   No

 5    further questions.

 6                   EXAMINATION

 7    BY ATTORNEY POPLSTEIN:

 8         Q.    Ms. Kluz, just a couple of quick

 9    questions here.

10              Were you aware of Mr. Medina's

11    allegations about how Mr. Testa acted towards

12    Maggie?

13         A.    Only in what I read in his alleged

14    suit was the first time I heard of the

15    allegations.

16         Q.    But not at any time during?

17         A.    No.

18         Q.    Did you ever have any discussions

19    with Mr. Medina at all concerning Mr. Testa,

20    that you recall?

21         A.    Yes, yes.

22         Q.    What do you recall?

23         A.    In April of 2023, we were in

24    Las Vegas.  Mariano would not have had much

25    communication with Daniel Medina, given that
```

MICHELLE KLUZ                                          JOB NO. 1880149
AUGUST 08, 2025

1    they're in very different roles in the

2    organization.  But Mariano Testa was in Las

3    Vegas as the creative director to help set up

4    the booth, so he then had interaction with the

5    field team.

6            And I didn't -- I was in the booth,

7    watching it get set up.  And Daniel came up to

8    me and said, "Oh, Mariano has a tasty" -- I

9    won't say the word he used; it was a slang word

10   for "derriere," a three-letter word -- and he

11   said, "I want to rub up against that."  And

12   that was what he told me in April of 2023 in

13   Las Vegas.

14      Q.    Okay.  What, if anything, did you do

15   to address that remark that he had made to you?

16      A.    Frankly, I was appalled because I'm

17   the CEO, and I felt that it was wildly

18   inappropriate.  But I wanted to handle it

19   professionally.

20            So I said, "I don't think it's

21   appropriate for you to discuss another employee

22   that way.  What you do consensually, on your

23   time, is your business.  But I don't think it's

24   appropriate for you to discuss this among the

25   Stila team," or something to that effect.

MICHELLE KLUZ                                                          JOB NO. 1880149
AUGUST 08, 2025

1           Q.     Did you feel like you had to do

2    anything else that would involve putting him on

3    notice that he was inappropriate?

4           A.      Well, I kept a little bit of an eye

5    on, when I was at the booth, making sure that

6    the interactions were kept professional that I

7    could see during working hours.

8                   And everything seemed -- I mean,

9    listen:  There was a lot of activity; there are

10   300 booths being set up at the same time.  But

11   I was in our area, and I didn't see anything

12   further during the couple of hours that the

13   booth was being set up.  And Daniel didn't say

14   anything inappropriate about Mariano Testa

15   after that to me.

16          Q.     Did Mr. Testa have any reporting

17   relationship with any of the field staff?

18          A.     Oh, no.  No.

19          Q.     Would he have had any involvement in

20   supervising people on the field staff?

21                   ATTORNEY GUHA:  Objection.

22   Form.

23                   THE WITNESS:  Oh.  Go ahead,

24   Raj.

25   BY ATTORNEY POPLSTEIN:

```
 1          Q.    You may answer.

 2          A.    No.

 3          Q.    What involvement would Mr. Testa

 4    have in evaluating the performance of anyone on

 5    the sales staff?

 6          A.    Absolutely zero.

 7          Q.    Would Mr. Testa have had any -- I'll

 8    strike the question.

 9                What did Mr. Testa have in terms of

10    a reporting relationship in the chain of

11    command between Nicole Marr and her teams and

12    you?

13          A.    Absolutely none.

14                So Nicole Marr reports -- at that

15    time, it was Martin Croteau; it's now Valerie

16    Aguilar.  And Martin and, now, Valerie report

17    to me.  And, at that point, Mariano reported to

18    the Chief Marketing Officer, Mary Rodriguez,

19    who reported directly to me.  They don't even

20    work in the same locations.

21          Q.    Okay.  Your principal location is

22    where, in New York?

23          A.    For Stila or for me?

24          Q.    For Stila.

25          A.    Actually, we're incorporated in --
```

MICHELLE KLUZ
AUGUST 08, 2025

JOB NO. 1880149

1   well, we're incorporated in Delaware, but our

2   head office is, technically, in Glendale,

3   California, although most of the executive team

4   sits in our New York office.

5          Q.    Do you know for a fact whether or

6   not Nicole Marr has any logs from the Ulta

7   store in question?

8          A.    I don't know for a fact.  But I do

9   know that she called to check them.

10              I believe she asked to see the logs

11  when she went into the stores.  But I don't --

12  I didn't see them, so I can't say concretely.

13         Q.    Was there a sales contest among the

14  field staff in 2023 about whether someone could

15  appear or attend Fashion Week?

16         A.    No.

17                  ATTORNEY POPLSTEIN:  I have

18  nothing further.

19                  EXAMINATION

20  BY ATTORNEY GUHA:

21         Q.    Just a couple follow-ups.

22              In your opinion, was the comment

23  that Daniel made about Mr. Testa's derriere a

24  violation of Stila employment policy?

25         A.    No.

MICHELLE KLUZ                                                    JOB NO. 1880149
AUGUST 08, 2025

```
 1   COMMONWEALTH OF PENNSYLVANIA      )
                                       )
 2   COUNTY OF PHILADELPHIA            )

 3                  CERTIFICATE

 4     I, Alexander Schaffer, a Notary Public in and
     for the Commonwealth of Pennsylvania, do hereby
 5   certify that the witness, MICHELLE KLUZ, was by
     me first duly sworn to testify the truth, the
 6   whole truth, and nothing but the truth; that
     the foregoing deposition was taken at the time
 7   and place stated herein; that review and
     signature of the deposition transcript was
 8   requested; and that the said deposition was
     recorded stenographically by me and then
 9   reduced to typewriting under my direction, and
     constitutes a true record of the testimony
10   given by said witness.

11     I further certify that I am not a relative,
     employee or attorney of any of the parties, or
12   a relative or employee of either counsel, and
     that I am in no way interested directly or
13   indirectly in this action.

14     IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my seal of office this 8th day
15   of August 2025.

16

17             /S/ Alexander Schaffer

18             Alexander Schaffer, Notary Public
               Court Reporter
19             Philadelphia County
               My Commission Expires 11/21/2027
20             Commission No. 1440904

21

22

23

24

25
```

Exhibit 14, Page 107