**THOMPSON COBURN LLP**
**JOHN L. VIOLA, CSB 131407**
jviola@thompsoncoburn.com
**CARA A. STRIKE, CSB 344467**
cstrike@thompsoncoburn.com
**10100 Santa Monica Blvd., Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

**THOMPSON COBURN LLP**
**CHARLES M. POPLSTEIN (*pro hac vice*)**
cpoplstein@thompsoncoburn.com
**One US Bank Plaza**
**St. Louis, Missouri 63101**
**Tel: 314.552.6095 / Fax: 314.552.7095**

Attorneys for Defendant
STILA STYLES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MEDINA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STILA STYLES, LLC, a Delaware limited liability company; MARIANO TESTA, an individual; and Does 1-25, inclusive,<br><br>Defendants. | CASE NO. 2:24-cv-06340-FLA-RAO<br><br>**DEFENDANT STILA STYLES, LLC'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS**<br><br>Date:    September 19, 2025<br>Time:    1:30 p.m.<br>Place:   Courtroom 9B |

Pursuant to Federal Rule of Civil Procedure 56 and Central District of California Local Rule 56-1, Defendant STILA STYLES, LLC ("Defendant"), lodges the following Statement of Uncontroverted Facts in which it contends are undisputed, and which entitles them to summary judgment as a matter of law. Defendant identifies these facts as undisputed solely for the purpose of moving for summary judgment or in the alternative summary adjudication, and reserves the right to present additional or contrary facts at trial.

8219861

## STATEMENT OF UNCONTROVERTED FACTS

| No. | Undisputed Fact | Evidence |
|---|---|---|
| 1. | Defendant is a cosmetics company that produces and sells makeup items and employs a "Field Team," who is generally tasked with working directly with retailers to support and drive sales and education of Defendant's cosmetics products. | Declaration of Cara A. Strike in Support of Defendant Stila Styles, LLC's Motion for Summary Judgment or Alternatively Partial Summary Judgment ("Strike Decl."), ¶ 3, Exhibit ("Ex.") 2, Deposition of Charles Miller ("Miller Depo.,") at 19:1-20. |
| 2. | Nicole Marr, Defendant's Vice President of Field Sales manages the entire Field Team domestically. | Strike Decl., ¶ 4, Ex. 3, Deposition of Nicole Marr ("Marr Depo.,") at 8:14-17; 18:17-24. |
| 3. | The Field Team includes "Regional Sales Managers" ("RSM") who report directly to Marr, and manage the Field Team in particular geographic regions. | Marr Depo., at 19:24-20:1; 21:25-22:13; Miller Depo., at 49:3-7; Strike Decl., ¶ 5, Ex. 4, Deposition of Lidia DeBaise ("DeBaise Depo.,") at 22:3-5. |
| 4. | Currently, and at the time of Plaintiff Daniel Medina's ("Plaintiff") employment, Charles Miller ("Miller") is the West Coast RSM, and Lidia DeBaise ("DeBaise") is the East Coast RSM. | Miller Depo., at 84:5-15; DeBaise Depo., at 19:6-9. |
| 5. | The RSMs directly supervise the Sales & Artistry Executives ("SAEs"). | Miller Depo., at 73:9-74:2; DeBaise Depo., at 19:19-20:9. |

| 6. | The SAEs develop and manage a team of freelance makeup artists, and the SAEs and freelance makeup artists assist with the education and sales of Stila cosmetics. | Miller Depo., at 45:10-24. |
| --- | --- | --- |
| 7. | In or about the end of 2021, Plaintiff began working with Miller as a freelance makeup artist. | Declaration of Charles M. Poplstein in Support of Defendant Stila Styles, LLC's Motion for Summary Judgment or Alternatively Partial Summary Judgment ("Poplstein Decl."), ¶ 2, Ex. 10, Deposition of Daniel Medina ("Medina Depo.,") at 51:5-6. |
| 8. | In or around March 2022, Miller informed Plaintiff that Defendant was opening an SAE position whose territory would encompass the Southern California and San Diego markets. | Miller Depo., at 56:18-57:12; 68:8-19; Medina Depo., at 52:1-11. |
| 9. | Plaintiff applied, was interviewed by Miller and Marr, and hired for the SAE position on or about April 4, 2022. | Miller Depo., at 56:18-57:12; 68:8-19; Marr Depo., at 26:24-27:5; Medina Depo., at 52:1-16; 61:5-16; Poplstein Decl., ¶ 7, Ex. 15 (Offer Letter). |
| 10. | Upon being hired, Plaintiff acknowledged several of Defendant's | Medina Depo., at 117:4-20; Poplstein Decl., ¶ 8, Ex. 16 (Policy |

| | | | |
|---|---|---|---|
| | | employment policies, including that he received a copy of and understood, and would comply with, Defendant's Policy Against Harassment. | Against Harassment signed by Plaintiff). |
| | 11. | Defendant's Policy Against Harassment requires that employees who feel that another employee has harassed them should immediately notify their supervisor or manager, human resources, or another member of management. | Poplstein Decl., ¶ 8, Ex. 16. |
| | 12. | Plaintiff acknowledged that he read and would adhere to Defendant's Employee Handbook on April 12, 2022. | Medina Depo., at 121:15-122:1; Poplstein Decl., ¶ 9, Ex. 17 (Plaintiff's signed Acknowledgement and Agreement of Defendant's Employee Handbook). |
| | 13. | Plaintiff completed a sexual harassment awareness training for nonsupervisory employees. | Medina Depo., at 119:14-120:15; Poplstein Decl., ¶ 10, Ex. 18 (certificate of completion of sexual harassment training). |
| | 14. | By completing the sexual harassment training, Plaintiff agreed that he understood Defendant's process for reporting workplace sexual harassment. | Poplstein Decl., ¶ 10, Ex. 18. |
| | 15. | During his employment, Plaintiff | Medina Depo., at 119:6-9; 123:17- |

| | | | |
|---|---|---|---|
| | | understood that he had a duty to report violations of Defendant's Policy Against Harassment. | 124:20. |
| | 16. | Plaintiff also understood that if he felt he was a victim of sexual harassment, he should share that with a manager. | Medina Depo., at 118:9-13. |
| | 17. | Plaintiff was "in the field" typically from Wednesday through Saturday, and was expected to physically visit the stores in his assigned region, conduct trainings, and hold events during those days. | Miller Depo., at 41:14-24. |
| | 18. | While in the field, Plaintiff primarily worked with the retailer Ulta Beauty. | Miller Depo., at 19:23-20:1. |
| | 19. | As a Sales & Artistry Executive, Plaintiff managed a team of freelance makeup artists who worked within his territory. He conducted trainings, held events, maintained a presence in stores, and managed day-to-day business with retailers in his assigned area. | Poplstein Decl., ¶ 7, Ex. 15 (Offer Letter). |
| | 20. | When Plaintiff entered an Ulta Store, as either a freelance artist or as an Sales & Artistry Executive, he was required to report to the Ulta manager that he was in the store and sign in | Miller Depo., at 56:6-17; Marr Depo., at 69:6-25; Medina Depo., at 72:18-73:4. |

| | | | |
|---|---|---|---|
| | | and out using Ulta's Vendor Log. | |
| | 21. | Plaintiff and other members of the Field Team received periodic reminders about the requirement to sign in and out of the Vendor Log every time they entered or left an Ulta Store. | Marr Depo., at 66:9-68:19; 69:6-25; Medina Depo., at 72:18-73:4. |
| | 22. | On November 13, 2023, Marr emailed the Field Team, including Plaintiff, a reminder that signing into the Ulta Vendor Log is a non-negotiable requirement, and failure to follow the directive may result in disciplinary action. | Medina Depo., at 173:25-174:12; Poplstein Decl., ¶ 12, Ex. 20 (November 13 – 14, 2023 email thread regarding the Ulta Vendor Log). |
| | 23. | Plaintiff responded to Marr's November 13, 2023, email stating that he would share the message during the team call on November 14, 2023. | Poplstein Decl., ¶ 12, Ex. 20. |
| | 24. | Plaintiff knew that signing in to the Ulta Vendor Log was a requirement as an SAE, and failure to do so could result in disciplinary action. | Medina Depo., at 174:13-25; Poplstein Decl., ¶ 12, Ex. 20. |
| | 25. | Tuesdays were an "in office" day where Sales & Artistry Executives are expected to complete reports, including recaps or summaries of events held during the previous week, | Medina Depo., at 54:9-18; Marr Depo., at 40:10-42:12. |

| | | | |
|---|---|---|---|
| | | report sales, balance and confirm funds left for their freelancer budget for the month, submit expenses for reimbursement, and ensure their calendar and schedule are updated. | |
| | 26. | On Tuesdays, the SAEs typically attended a meeting run by Marr with the entire Field Team, and attended one-on-one meetings with their direct RSM. | Medina Depo., at 55:4-12; Marr Depo., at 26:19; Poplstein Decl., ¶ 3, Ex. 11, Deposition of Malgorzata Krzeptowska ("Krzeptowska Depo.,") at 20:11-21:7; Poplstein Decl., ¶ 5, Ex. 13, Deposition of Elizabeth Jensen ("Jensen Depo.,") at 17:13-17; 18:3-20; Strike Decl., ¶ 6, Ex. 5, Deposition of Haley Stant ("Stant Depo.,") at 14:8-18. |
| | 27. | There was not a contest in 2023 where the field staff member with the highest sales would be awarded with a trip to New York City Fashion Week, nor was Plaintiff the highest salesperson during that time. | Miller Depo., at 161:13-25; Poplstein Decl., ¶ 6, Ex. 14 Deposition of Michelle Kluz ("Kluz Depo.,") at 60:13-16; Jensen Depo., at 93:14-21; Krzeptowska Depo., at 50:8-14; Marr Depo., at 100:13-21. |
| | 28. | Defendant sends many of its employees to the Ulta FLC event every year. | Marr Depo., at 27:25-28:11. |

| 29. | The Ulta Event is a conference, typically held around April every year, by the retailer Ulta Beauty, during which time Stila hosts a booth and presents its products to Ulta personnel. | DeBaise Depo., at 20:10-21; Krzeptowska Depo., at 17:1-10. |
|---|---|---|
| 30. | In 2022, Plaintiff attended the Ulta Event in San Antonio, Texas. | Miller Depo., at 164:8-9. |
| 31. | Mariano Testa ("Testa"), Stila's recently hired Chief Creative Officer, attended the 2022 Ulta Event for a short period of time, as he had recently commenced employment with Stila. | Poplstein Decl., ¶ 4, Ex. 12, Deposition of Mariano Testa ("Testa Depo.,") at 15:22-23; 51:4-17; 59:23-60:1. |
| 32. | Stila employees who attended the 2022 Ulta Event did not witness Testa engage in any inappropriate behavior of a sexual nature towards Plaintiff. | Marr Depo., at 116:7-12; DeBaise Depo., at 28:7-10; Miller Depo., at 164:18-21. |
| 33. | Testa does not recall meeting Plaintiff during the 2022 Ulta Event. He denies engaging in any inappropriate behavior towards Plaintiff. | Testa Depo., at 51:4-21; 70:10-73:8. |
| 34. | Plaintiff did not personally interact with Testa before the 2022 Ulta Event, and did not personally interact with him after the 2022 Ulta Event or before the 2023 Ulta Event. | Medina Depo., at 26:9-25. |

| 35. | Plaintiff did not raise any concerns to Marr, Miller, DeBaise, or anyone in management that Testa engaged in inappropriate behavior towards him during the 2022 Ulta Event, or at any point in the following year. | Miller Depo., at 165:1-4; Marr Depo., at 116:1-4; DeBaise Depo., at 27:14-25. |
|---|---|---|
| 36. | Plaintiff did not express any reluctance to management after the 2022 Ulta Event, about working at or near Testa at the April 2023 Ulta Event. | Miller Depo., at 165:1-4; Marr Depo., at 116:1-4; DeBaise Depo., at 27:14-25. |
| 37. | The 2023 Ulta Event was held in Las Vegas, Nevada over a span of approximately four to five days. | Miller Depo., at 71:23-72:3; Stant Depo., at 30:19-24. |
| 38. | Plaintiff attended this conference, along with Michelle Kluz, Nicole Marr, Lidia DeBaise, Haley Stant, Maggie Krzeptowska, Elizabeth Jensen, and Mariano Testa. | Kluz Depo., at 56:18-57:13; Marr Depo., at 116:13-15; DeBaise Depo., at 20:22-24; Stant Depo., at 11:13-15; Krzeptowska Depo., at 65:1-7; Jensen Depo., at 16:18-17:12; Testa Depo., at 21:18-22:16. |
| 39. | Plaintiff approached Defendant's CEO Michelle Kluz while setting up the conference booth at the 2023 Ulta Conference and said "Oh, Mariano has a tasty a** and I want to rub up against that." Kluz told him that she did not think it was appropriate to | Kluz Depo., at 56:23-57:25. |

| | | | |
|---|---|---|---|
| | | discuss another employee that way, and what he chose to do consensually on his own time was his business. | |
| | 40. | Testa said the use of the term "daddy" is a code word in the gay community to express sexual interest. | Testa Depo., at 64:22-65:21. |
| | 41. | Testa related that Plaintiff called him "daddy" a few times at the 2023 Ulta Conference. | Testa Depo., at 64:22-65:21. |
| | 42. | According to Plaintiff's coworker Maggie Krzeptowska, Plaintiff referred to Testa as "daddy," on several occasions during the 2023 Ulta Event. | Krzeptowska Depo., at 35:3-12; 52:25-53:18. |
| | 43. | Also during the 2023 Ulta Event, Plaintiff bragged to Krzeptowska that "daddy," meaning Testa, invited him back to his hotel room during the 2022 Ulta Event. | Krzeptowska Depo., at 34:3-12; 35:3-12; 35:20-36:12; 53:19-54:8. |
| | 44. | During the 2023 Ulta Event, Plaintiff called Testa "daddy" in front of Lidia DeBaise. | DeBaise Depo., at 31:13-25. |
| | 45. | During the 2023 Ulta Event, Plaintiff called Testa "daddy" in front of Haley Stant approximately ten times. | Stant Depo., at 34:4-35:12. |
| | 46. | During the 2023 Ulta Event, in a gossipy manner, Plaintiff also leaned | Stant Depo., at 38:5-14. *See also* Stant Depo., at 16:8-21; 17:11- |

| | | | |
|---|---|---|---|
| | | over and whispered in Haley Stant's ear that at the 2022 Ulta Event, Testa invited Plaintiff to his hotel room. | 18:14; 19:9-21:25; 25:8-26:11; 27:1-16; 29:17-30:1. |
| | 47. | Another coworker, Elizabeth Jensen, said that Plaintiff flirted with Testa during the 2023 Ulta Event. | Jensen Depo., at 57:11-58:11. |
| | 48. | Plaintiff also went to two different bars with Testa, Jensen, and Krzeptowska, in the evening after the Ulta Events finished for the day. | Jensen Depo., at 62:22-63:23; Testa Depo., at 66:24-68:5; 69:6-9. |
| | 49. | Attendees described that they did not witness Testa engage in inappropriate behavior towards Plaintiff during the 2023 Ulta Event. | Marr Depo., at 115:20-25; 116:10-12; 117:24-118:1; Kluz Depo., at 58:1-15; Stant Depo., at 46:9-13; DeBaise Depo., at 28:11-14; Jensen Depo., at 40:16-20; 42:4-43:9; Krzeptowska Depo., at 60:2-5; 65:17-66:3. |
| | 50. | Jensen did not observe Testa engaging in any of a series of claims made by Plaintiff in his Complaint and interrogatory answers. Although Plaintiff was comfortable in telling her about personal issues, Plaintiff did not tell Jensen that Testa had engaged in any such conduct. | Jensen Depo., at 83:8-86:8. |
| | 51. | Krzeptowska did not observe Testa engaging in any of a series of claims | Krzeptowska Depo., at 65:17-67:21. |

| | | | |
|---|---|---|---|
| | | made by Plaintiff in his Complaint and interrogatory answers. Although Plaintiff was comfortable in telling her about personal issues, Plaintiff did not tell Krzeptowska that Testa had engaged in any such conduct. | |
| | 52. | Testa denied engaging in any of the behavior Plaintiff alleges occurred in his Complaint or interrogatory answers during the 2023 Ulta Event. | Testa Depo., at 51:22-53:5. |
| | 53. | Testa denies engaging in any inappropriate behavior with or towards Plaintiff at any time. | Testa Depo., at 70:10-18; 73:4-8. |
| | 54. | Plaintiff had no further personal interactions or communications with Testa after the 2023 Ulta Event. | Medina Depo., at 26:9-25; 36:7-12. |
| | 55. | Testa worked in a different department than Plaintiff. He had no supervisory authority over Plaintiff, had no authority to evaluate or discipline Plaintiff, and was not involved in the decision to dismiss Plaintiff. In fact, Testa himself left the company more than four months prior to Plaintiff's dismissal. | Medina Depo., at 26:23-27:3; Kluz Depo., at 59:3-6; 59:9-13; Testa Depo., at 12:11-12. |
| | 56. | Plaintiff emailed Controller Karen Tuey on July 18, 2023, asking | Strike Decl., ¶ 2, Ex. 1, Deposition of Karen Tuey ("Tuey Depo.,") at |

| | | | |
|---|---|---|---|
| | | whether she knew about the new exempt employee law in California. | 41:20-42:3; 42:9-19; Strike Decl., ¶ 7, Ex. 6 (email exchange between Ms. Tuey and Plaintiff). |
| | 57. | Tuey informed Plaintiff that she would check with Defendant's third-party human resources consultant company ADP, and would follow up with him. | Tuey Depo., at 43:3-9; Strike Decl., ¶ 7, Ex. 6. |
| | 58. | On or about July 21, 2023, Tuey informed Plaintiff that his salary would be increased, and Defendant provided backpay to cover the difference between his new and old salary in 2023. | Medina Depo., at 159:20-160:12; Poplstein Decl., ¶ 11, Ex. 19 (email exchange between Ms. Tuey and Plaintiff regarding 2023 backpay); Tuey Depo., at 74:21-75:16. |
| | 59. | Also on July 21, 2023, Plaintiff thanked Tuey for resolving the matter. | Medina Depo., at 159:20-160:12; Poplstein Decl., ¶ 11, Ex. 19; Tuey Depo., at 74:21-75:16. |
| | 60. | Within the last six months of Plaintiff's employment, Marr went to the Burbank Ulta store when Plaintiff was scheduled to be there. | Marr Depo., at 51:12-52:20; 57:8-18; Strike Decl., ¶ 9, Ex. 8 (November 29, 2023 email from Ms. Marr to Ms. Tuey summarizing the four incidents when Plaintiff was not in the store where he said he would be.) |
| | 61. | When she arrived, Plaintiff was not in the store, and she saw one of the freelance makeup artists on Plaintiff's | Marr Depo., at 51:12-52:20; Strike Decl., ¶ 9, Ex. 8. |

| | | team training another freelance artist. | |
|---|---|---|---|
| | 62. | When Marr followed up with Plaintiff about where he was, he told Marr that he went to another store and did not update his schedule. | Marr Depo., at 51:12-52:20; Strike Decl., ¶ 9, Ex. 8. |
| | 63. | At the time, Marr chose to give Plaintiff the benefit of the doubt and take him at his word. | Marr Depo., at 51:12-52:20; Strike Decl., ¶ 9, Ex. 8. |
| | 64. | Marr also coached Plaintiff that having two freelance artists in the same store was inadvisable and a waste of payroll, and that he should not have freelance artists conduct the training of other freelancers. | Marr Depo 58:12-59:5; 60:24-61:12; 63:4-23; 97:10-22. |
| | 65. | On September 29, 2023, Marr went to the Sherman Oaks Ulta Store during a time Plaintiff was scheduled to be there. | Marr Depo., at 53:8-54:23; Strike Decl., ¶ 9, Ex. 8. |
| | 66. | Plaintiff was not in the Sherman Oaks Ulta Store on September 29, 2023, although two of his freelancers were. | Marr Depo., at 53:8-54:23; Strike Decl., ¶ 9, Ex. 8. |
| | 67. | Plaintiff told Marr that he was not in the Sherman Oaks Ulta Store because he was dropping off supplies for an event. | Marr Depo., at 53:8-54:23; Strike Decl., ¶ 9, Ex. 8. |
| | 68. | Marr again coached Plaintiff regarding having two freelancers in a | Marr Depo., at 53:8-54:23; Strike Decl., ¶ 9, Ex. 8. |

| | | | |
|---|---|---|---|
| | | store, and again chose to give Plaintiff's the benefit of the doubt. | |
| | 69. | For several months, Miller and Marr coached Plaintiff regarding areas where he needed to improve his performance, including improving his business acumen, scheduling, time management, completing his deliverables in a timely manner, and better managing his freelance payroll. Despite this coaching, Plaintiff failed to improve. | Marr Depo., at 34:5-37:25; 81:11-25; Miller Depo., at 38:8-25;123:8-18; 150:5-16. |
| | 70. | Plaintiff was placed on a Performance Improvement Plan ("PIP") on or about October 24, 2023. | Marr Depo., at 79:10-24; Strike Decl., ¶ 8, Ex. 7 (Plaintiff's performance improvement plan). |
| | 71. | Marr placed Plaintiff on the Performance Improvement Plan with the hope that he would improve his performance; it was not disciplinary and she had not yet decided to recommend his dismissal. | Marr Depo., at 93:14-94:5. |
| | 72. | Plaintiff consulted with an attorney before he was placed on a Performance Improvement Plan, sometime in the beginning of October 2023. | Medina Depo., at 32:10-33:1. |
| | 73. | On November 18, 2023, Plaintiff was | Marr Depo., at 66:9-68:19; Strike |

| | | |
|---|---|---|
| | scheduled to hold an event in an Ulta Store in Cerritos. Marr noted a potential discrepancy because Plaintiff reported he personally sold $600 at the event, but the store only reported that it sold $450 for the entire week. Marr asked Plaintiff about the discrepancy. He told Marr it was a slow day because of the rain. | Decl., ¶ 9, Ex. 8. |
| 74. | Marr then contacted the Cerritos store, and discovered that Plaintiff did not sign in or out of the Ulta Vendor Log. | Marr Depo., at 66:9-68:19; Strike Decl., ¶ 9, Ex. 8. |
| 75. | Marr also contacted the freelance artists who were at the Cerritos Store on November 18, and both confirmed that Plaintiff was not in the store. | Marr Depo., at 66:9-68:19; Strike Decl., ¶ 9, Ex. 8. |
| 76. | Marr followed up with Plaintiff again. Plaintiff admitted he had not signed Vendor Log, but claimed he was at the Cerritos Store part of the day and left because one of his freelance artists had a medical emergency. | Marr Depo., at 66:9-68:19; Strike Decl., ¶ 9, Ex. 8.; Medina Depo., at 208:10-14. |
| 77. | Plaintiff admitted he was not in the Cerritos store for the entire time he was previously scheduled to hold an event, and did not sign in to the Vendor Log despite Marr reminding | Medina Depo., at 208:10-14; Marr Depo., at 66:9-67:11; *see* Poplstein Decl., ¶ 12, Ex. 20. |

| | | | |
|---|---|---|---|
| | | him *five days prior* that doing so is required. | |
| | 78. | Once again Plaintiff also scheduled two freelance artists, in addition to himself, to be at the Cerritos event, despite prior coaching about not scheduling two freelancers for events | Marr Depo., at 58:12-59:5; 60:24-61:12; 63:4-23; 97:10-22; Medina Depo., at 221:13-17. |
| | 79. | After the Cerritos incident, Marr completely lost trust in Plaintiff. | Marr Depo., at 70:1-9. |
| | 80. | Marr began to more closely review Plaintiff's records and found that he frequently scheduled two freelance artists in the same store, even after their conversations about this issue. | Marr Depo., at 62:2-63:3. |
| | 81. | Plaintiff was scheduled to hold an event in the Seal Beach Ulta Store on Saturday, November 25, 2023, beginning at 10:00 a.m. | Marr Depo., at 73:4-75:1; 106:16-21; 107:3-22; Strike Decl., ¶ 9, Ex. 8. |
| | 82. | Having lost trust that Plaintiff was performing his job duties, Marr called the Seal Beach Ulta Store on November 25, 2023, at 12:30 p.m., and asked whether anyone from Stila was working in the store. | Marr Depo., at 73:4-75:1; Strike Decl., ¶ 9, Ex. 8. |
| | 83. | They checked the Ulta Vendor Log, looked out at the store, and confirmed that no one from Stila was there. | Marr Depo., at 73:4-75:1; Strike Decl., ¶ 9, Ex. 8. |

| 84. | Marr contacted Plaintiff, and told him that she called the Seal Beach Store, and he was not there. | Marr Depo., at 73:4-75:1; Strike Decl., ¶ 9, Ex. 8. |
| --- | --- | --- |
| 85. | At the time, Marr believed that Plaintiff lived close to the Seal Beach Store. | Marr Depo., at 73:4-75:1; Strike Decl., ¶ 9, Ex. 8. |
| 86. | Plaintiff did not respond for 20-30 minutes, and then sent a photo of an Ulta Vendor Log stating that he was there from 11:00 – 6:00 p.m. | Marr Depo., at 73:4-75:1; Strike Decl., ¶ 9, Ex. 8. |
| 87. | Marr did not consider this material to provide proof that Plaintiff had been at the store as he claimed, because, for instance, there was no photo showing a separate sign in or sign out on the log. | Marr Depo., at 73:4-75:1; Strike Decl., ¶ 9, Ex. 8. |
| 88. | Following the Seal Beach incident on Saturday November 25, 2023, Marr began the process to recommend Plaintiff's dismissal. | Marr Depo., at 94:6-8. |
| 89. | Marr contacted Tuey to discuss logistics that needed to be resolved before letting Plaintiff go, including to confirm whether Defendant owed him any reimbursements and how quickly his final paycheck could be cut. | Marr Depo., at 107:3-108:2. |
| 90. | Tuey did not recommend or decide to | Tuey Depo., at 11:2-6; 12:4-16; |

| | | terminate Plaintiff from his employment. | Marr Depo., at 104:17-19. |
|---|---|---|---|
| | 91. | Once Marr gathered this information, Marr contacted Defendant's CEO, Michelle Kluz, and shared her recommendation to terminate Plaintiff's employment. | Marr Depo., at 107:3-108:2. |
| | 92. | Kluz agreed with Marr's recommendation to terminate Plaintiff's employment. | Marr Depo., at 104:4-24; 108:3-23; Kluz Depo., at 22:17-20; 49:4-14. |
| | 93. | On Wednesday, November 29, 2023, Marr, Tuey, and Miller met with Plaintiff via videoconference, and informed Plaintiff that he was being dismissed. | Marr Depo., at 103:20-104:9. |
| | 94. | On December 4, 2023, Plaintiff and Tuey had a conversation regarding Plaintiff's 2022 salary. | Tuey Depo 68:3-23; Strike Decl., ¶ 10, Ex. 9, (email from Tuey to Plaintiff on December 4, 2023). |
| | 95. | Also on December 4, 2023, Tuey informed Plaintiff that Defendant processed a direct deposit for nine months of backpay to Plaintiff for his 2022 salary. | Tuey Depo 68:3-23; Strike Decl., ¶ 10, Ex. 9. |
| | 96. | Since Plaintiff's termination from employment, he has not engaged or spoken to any therapist, counselor, or mental health specialist, and is not | Medina Depo 39:21-40:3; 112:1-3. |

| | | taking any prescription drugs other than for ADHD and allergies. | |
|---|---|---|---|
| | 97. | Plaintiff has been ready, willing, and able to work without restriction since he left his employment with Defendant. | Medina Depo., at 21:20-23. |
| | 98. | Plaintiff has been employed by Sunday Riley Modern Skincare since December 2, 2024, and is making more money with Sunday Riley than he was while employed with Defendant. | Medina Depo., at 74:6-13; 269:16-18. |

DATED:  August 15, 2025          **THOMPSON COBURN LLP**

By: *Cara Strike*

**JOHN L. VIOLA**
**CARA A. STRIKE**
**CHARLES M. POPLSTEIN** *(pro hac vice)*
Attorneys for Defendant
STILA STYLES, LLC

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 10100 Santa Monica Boulevard, Suite 500, Los Angeles, California 90067.

On August 15, 2025, I served true copies of the following document(s) described as **DEFENDANT STILA STYLES, LLC'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS** on the interested parties in this action as follows:

Ranojoy Guha                                        Attorneys for Plaintiff DANIEL
EMPLOYEE CIVIL RIGHTS GROUP          MEDINA
3415 S. Sepulveda Boulevard, Suite 1100
Los Angeles, CA 90034
(310) 598-1524
raj@employeecivilrightsgroup.com
raj@guhalaw.com
alexa@employeecivilrightsgroup.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 15, 2025, at Los Angeles, California.

Catherine C. Mamayson

8219861

PROOF OF SERVICE